## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                        )<br>        Plaintiff,                            )<br>                                                        ) Case No. 2:17-cr-67<br>        v.                                        )<br>                                                        )<br>GREGORY KYLE SEERDEN,      )<br>                                                        )<br>        Defendant.                        )<br> | |

## CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND
## BRIEF *AMICUS CURIAE*
## IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS

### INTRODUCTION

Both the Defendant, Gregory Seerden, and the United States agree that the Fourth Amendment applies to searches and seizures of military personnel both on and off a military base.[1] And rightfully so, for the Amendment secures the right of "**the people**" to be free from unreasonable searches for, and seizures of, "their persons, houses, papers, and effects." And, as the Supreme Court has recently reaffirmed, the rights of "the people" — including the one secured by the Fourth Amendment — "unambiguously refers to **all** members of the political community, not an unspecified subset." *See* District of Columbia v. Heller, 554 U.S. 570, 579-81 (2008) (emphasis added).

---

[1] Defendant's Motion to Suppress at 4; Government Response to Suppress ("Govt. Resp.") at 5.

Although Article I, Section 8, Clause 14 vests in Congress the "power … to make rules for the government and regulation of the land and naval forces," that power, like other enumerated powers, is subject to the limitations of the Bill of Rights, including the Fourth Amendment. See Barron v. Baltimore, 32 U.S. 243 (1833). Thus, the Government must concede, as it has in its Response to Defendant's Motion to Suppress (at 5), the Fourth Amendment applies to service members.

But the Government is mistaken in its assumption that the Fourth Amendment applies to members of the military with "different standards." *See* Govt. Resp. at 4. Indeed, the Government does not actually argue in this case that the search of Mr. Seerden's cell phone should be subject to a different test than would have been applied to a search of a civilian's cell phone. Rather, the Government applies the same "reasonable expectation of privacy" test to a search of the contents of Mr. Seerden's cell phone, just as the Supreme Court recently did in a search of a civilian's cell phone. *Compare* Riley v. California, 134 S.Ct. 2473, 2484 (2014) *with* Govt. Resp. at 4-8. It is not, then, that the Fourth Amendment imposes a "different standard." Instead, it is the judicially-created "reasonable expectation of privacy" test that the Government contends would provide less Fourth Amendment protection to a service member, as contrasted with the relationship of an ordinary citizen to his Government. *See* Govt. Resp. at 5.

Even under the Government's theory of the case, it must concede that the military's own rules acknowledge the difference between an "inspection search" and a "law enforcement

style search" performed on a service member.[2] Within this context, there is, no doubt that in the present case that Mr. Seerden was subject to a law enforcement search, and that the search was unreasonable under the "reasonable expectation of privacy" test, because the government lacked the probable cause required by the Fourth Amendment. See Def. Motion at 18-22.

However, even if Mr. Seerden's cannot establish that he has a reasonable expectation of privacy, that does not resolve the matter. Under the rule pronounced in United States v. Jones, 132 S.Ct. 945 (2012), and Florida v. Jardines, 133 S.Ct. 1409 (2013), the reasonable expectation of privacy test is not the exclusive indicator of the presence of an unconstitutional search. Rather, the Fourth Amendment's "baseline" is Mr. Seerden's property right in his cell phone, not his privacy expectations with respect to that instrument.

I. **THE GOVERNMENT SEIZURE AND SEARCH OF SEERDEN'S CELL PHONE WAS BASED UPON A FALSE FOURTH AMENDMENT PREMISE.**

   A. **The Fourth Amendment Protects Private Property Rights Which Cannot Be Diminished by Lowered of Expectations of Privacy.**

The Government contends that, because Seerden was on active duty as a member of the United States Navy, the Fourth Amendment applies to the search of his cell phone — but "with different standards" of probable cause and reasonableness.[3] The Government is sorely mistaken. Relying primarily upon two Fourth Circuit cases — United States v. Rendon, 607 F.3d 982 (4th Cir. 2010) and United States v. Jenkins, 986 F.2d 76 (4th Cir. 1993) — the

---

[2] Defendant's Reply to Government's Response to Defendant's Motion to Suppress ("Def. Reply) at 2. This distinction is similar to the difference between civil administrative search and a law enforcement search performed on a civilian. See, e.g., Los Angeles v. Patel, 135 S.Ct. 2443, 2446 (2015).

[3] See Government Response to Suppress ("Govt. Resp.") at 4-8.

3

Government asserts that, because Seerden and his cell phone were seized and searched on a military installation, he had a reduced "expectation of privacy" in the contents of his phone. *See* Govt. Resp. at 5-6. Therefore, the Government argues, the probable cause needed to justify the issuance of a search warrant, and the reasonableness of the overall search of the cell phone, must be governed by a lower standard than otherwise would be the case if the search had taken place outside a military installation.

Seerden hotly contests the Government's reading of <u>Rendon</u> and <u>Jenkins</u> — and rightfully so.[4] Not only are the cases distinguishable on their facts,[5] but also Seerden refutes the Government's claim that there is a lesser expectation of privacy governing searches on military installations. Finally, Seerden notes a decision by the United States Court of Appeals for the Armed Forces (CAAF), "holding that military service members retain a legitimate expectation of privacy and therefore Fourth Amendment rights, in the digital contents of their personally-owed electronic devices on a military base." Def. Motion at 15. *See* <u>United States</u> v. <u>Conklin</u>, 63 M.J. 333, 337 (C.A.A.F. 2006). Contrary to the Government's claim that "different standards" apply, Seerden notes that, "because there is a reasonable expectation of privacy in the property to be searched … military law follows federal constitutional standards as described by the Supreme Court." Def. Motion at 4.

But there is more to this case than "reasonable expectations of privacy." The Government wrongfully assumes that the people's only protected Fourth Amendment interest

---

[4] *See* Defendant's Motion to Suppress ("Def. Motion") at 3-14; Defendant's Reply to Government's Response to Defendant's Motion to Suppress (Def. Reply) at 3-5.

[5] Def. Motion at 4-5, 6-11.

recognized by the Supreme Court is privacy. However, in 2012, two years after <u>Rendon</u> and nineteen years after <u>Jenkins</u> — the two cases upon which the Government primarily relies — the Supreme Court decided <u>United States</u> v. <u>Jones</u>, 132 S.Ct. 945 (2012), which made clear that, first and foremost, the Fourth Amendment protects private property. *Id.* at 949-52. Only secondarily, the Court noted, does the Fourth Amendment protect a reasonable expectation of privacy. *Id.* And, while the Court noted that privacy principles may guide a court's hand in a Fourth Amendment case, that privacy standard serves only as an additional measure by which a Fourth Amendment claim may be tested — never to "'snuff out … protection for property.'" *Id.* at 951. In his decision for the Court, Justice Scalia explained that the Fourth Amendment's primary protection of property rights was clearly revealed by the language of the Amendment:

> The **text** of the Fourth Amendment reflects its close connection to **property**, since otherwise it would have referred simply to "the right of the people to be secure against unreasonable searches and seizures"; the phrase "in their persons, houses, papers, and effects" would have been superfluous. [<u>Jones</u> at 949 (emphasis added).[6]]

---

[6] By contrast, the word "privacy" does not appear in the text of the U.S. Constitution. Its origin is in a law review article, written more than 100 years after the ratification of the Fourth Amendment, and which nowhere even discussed the U.S. Constitution. Samuel D. Warren & Louis D. Brandeis, "The Right to Privacy," HARVARD L.REV. vol. IV, no. 5 (Dec. 15, 1890). Applied to Fourth Amendment law, privacy has become a dangerous judicial construct which diverts judges from applying the Amendment's text. Devoid of historic meaning, the reasonable expectation of privacy test allows a judge to reach a personally preferred decision, elevating the felt "needs" of law enforcement over the Constitutional text, without regard for the original textual meaning subscribed to by the Framers of the Fourth Amendment.

The central holding of Jones was reiterated by the Court the next year in Florida v. Jardines, 133 S.Ct. 1409 (2013). There, Justice Scalia explained where a court's analysis of such a case must begin:

> The [Fourth] Amendment establishes a simple **baseline**, one that for much of our history formed the exclusive basis for its protections: When "the Government obtains information by **physically intruding**" on "persons, houses, papers, or effects," a 'search' within the original meaning of the Fourth Amendment has "undoubtedly occurred." [Jardines at 1414 (emphasis added).]

Justice Scalia then explained the interaction between the Jones property principles and the Katz privacy construct when he stated that:

> though *Katz* may **add** to the baseline, it does **not subtract** anything from the Amendment's protections when the Government does engage in [a] **physical intrusion** of a constitutionally protected area.... [*Id*. (citations omitted) (bold added).]

Indeed, for most of our nation's existence, the property principles of the Fourth Amendment were so highly revered that they prevented searches and seizures of privately owned property unless the Government could show a superior interest in that property:

> [W]ith or without a warrant, specified or unspecified, there is certain property which may not be searched for and seized at all. It was laid down in the Boyd case [Boyd v. United States, 116 U.S. 616 (1886)] that only that class of property to which the government is otherwise entitled or to which its possessor is not entitled, as stolen goods, counterfeit money, implements used to commit a crime, etc., is seizable under a search warrant, whereas a person's private books and papers cannot be so taken in order merely to get information from them to be used in evidence against him. In other words, the Court there drew a distinction between "contraband" property and property of merely "evidential" value. [N. Lasson, The History and Development of the Fourth Amendment to the United States Constitution, at 133 (Johns Hopkins Press: 1937).]

At issue in this case is whether the Government had probable cause to conduct the initial search of Seerden's private property, namely, his personal cell phone, "for evidence

6

related to the alleged sexual assault." Govt. Resp. at 3. The Government would have this Court assess whether there was probable cause in light of Seerden's "reasonable expectation of privacy," due to the "military interest in preventing the entry of contraband onto the bases." *Id*. at 5. Second, the Government would urge the Court to weigh "the need to protect a military installation [that] presents security concerns non-existent in a civilian locale." *Id*. at 5-6. Third, the Government would have this Court assess probable cause balanced by the general "military emphases on good order and discipline, security and readiness," and by "the enhanced importance" of a Navy First Class Petty Officer which "requires that he and his colleagues maintain readiness at all times in the interest of our nation's defense." *Id*. at 6-7. Finally, the Government urges that, because Seerden is on special assignment away from his "permanent place of duty [he] could not expect the same expectation [sic] of privacy in his person or belongings as he would off-base or at his permanent duty station." *Id*. at 7. Thus, when analyzed in light of military needs, the Government believes that Seerden's allegedly diminished expectation of privacy — both subjective and objective — supports "the overall reasonableness of any search conducted on such property." *Id*. at 6.

None of these reasons, however, are constitutionally permissible to diminish the property protections reaffirmed in Jones and Jardines. Under those decisions, Seerden's property interest in his cell phone cannot be diminished by policy considerations of any sort. In other words, the military concerns that allegedly reduce Seerden's privacy expectations would take him below the property rights "baseline," in direct violation of the Supreme Court's teaching in Jones and Jardines.

B.  **The Fourth Amendment Property Principle Commands Strict Application of the Probable Cause Requirement to Justify the Issuance of a Search Warrant.**

Under Jones, there is no doubt that the NCIS intrusion upon Seerden's cell phone was a physical trespass on an "effect" protected by the Fourth Amendment from an unreasonable search. As Justice Scalia observed about the use of a GPS device attached to a motor vehicle, "[T]he Government physically occup[ying] private property for the purpose of obtaining information [is] no doubt … a physical intrusion [constituting] a 'search' within the meaning of the Fourth Amendment when it was adopted," and would have been recognized as a common law trespass. *See* Jones at 949-50. Additionally, then 10th Circuit Judge, Neil Gorsuch concluded that the search of an email attachment on a third party's computer system "seems pretty clearly to qualify as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." United States v. Ackerman, 831 F.3d 1292, 1307 (2016). Finally, Judge Gorsuch also noted that "many courts have already applied the common law's ancient trespass to chattels doctrine to electronic, not just written, communications." *Id.* at 1309.

Under Jones, then, unlike one's privacy interest which fluctuates, one's property interest is fixed, not variable depending on external circumstances. Seerden's property interest in his personal cell phone, then, does not vary depending on whether the cell phone is on his person or amongst his belongings, and whether he is off-base, on-base, or located at his permanent or temporary duty station — as the Government insists would be the case under the reasonable-expectation of privacy test. *See* Govt. Br. at 7. Further, to ensure the integrity of Seerden's property rights, the probable cause requirement for the issuance of a CASS must be

closely tailored to avoid a government-sanctioned trespass. To that end, MRE315f defines probable cause as existing "'when there is reasonable belief that the… **evidence** sought is **located** in the place … to be searched. *See* Def. Motion at 18-19. *See also* Govt. Resp. at 12.

In order for NCIS to obtain a warrant for the cell phone, the supporting Affidavit would need to have demonstrated that the cell phone was somehow, for example, an instrumentality of the alleged sexual assault. If that was not the case, it should not have been seized and searched. Even if NCIS had an inkling that accessing Seerden's cell phone possibly could be bear on the alleged assault, that is not enough to justify watering-down the probable cause standard as one governed by "reasonable inferences," not facts, as the Government has urged. Govt. Resp. at 14. Rather, the probable cause standard should be more robust, requiring "facts giving rise to a reasonable belief that evidence of [the alleged assault] would be found on Mr. Seerden's phone." Def. Motion at 19. After all, the Fourth Amendment commands particularity in describing both the place to be searched, as well as the persons or things to be seized.

    **C.    The Decision by Seerden's California Unit Commander to Issue the Search Authorization for Seerden's Cell Phone Breached the Fourth Amendment Property Baseline.**

According to Military Rule of Evidence 315d, the power to authorize a command search lies with the command officer "who has control over the place where the property or person is situated or found." Def. Motion at 16. This general rule is consistent with the Fourth Amendment property principle. However, as pointed out in Seerden's motion, although Seerden and his cell phone were physically located in Virginia Beach, Virginia, the Naval Criminal Investigative Service ("NCIS") "received a CASS from the unit commanding

officer in San Diego, California." *Id*. at 2. Def. Reply at 1-2. As noted in his Reply, Seerden's unit commanding officer in San Diego, California did not have control over the Joint Expeditionary Base-Little Creek-Fort Story ("EBLCFS") in Virginia Beach, Virginia — the place where the search was authorized. Def. Reply at 1-2.

The Government claims that NCIS applied for search authorization with the San Diego unit command officer (rather than the Virginia Beach commander) because of the interest "to ensure the safety of the unit members, and the good order and discipline within the unit." *See* Govt. Resp. at 9-10. The Government contends that it was the San Diego unit command officer who had an "intimate understanding of Seerden's business aboard the JEBLCFS, at what information he may have amongst his personal belongings" — as opposed to the local installation unit commander who only controlled the "brick and mortar housing" where Seerden's cell phone had been seized by NCIS in the course of investigation of an alleged assault. *See id*. at 10. Therefore, the Government contends, the San Diego commander rather than the Virginia Beach commander was **best suited to determine whether there was probable cause** to search the cell phone for evidence of the alleged sexual assault. *See Govt. Resp*. At 8-10 (emphasis added). In fact, just the opposite is the case.

As Seerden has reminded this Court in his Reply, the search authorization here was for a "law enforcement style search," not a "check-in inspection search." Def. Reply at 2-3. For an inspection type search, then the San Diego unit commander's special knowledge of the contents of Seerden's private belongings might have been relevant. But the authorization sought by NCIS arose not from Seerden's deployment to JEBLCFS, or his military duties, but from an off-duty incident of alleged criminal behavior on the Virginia Beach base. This

10

required knowledge of the physical premises under the direct control of the Virginia Beach installation command officer. While it is almost certain that the installation command officer would be familiar with the overall layout of the Little-Creek base (where the alleged sexual assault took place), including the relevant temporary living quarters, the San Diego commander possibly may never have even been to JEBLCFS, or at least not for many years. He likely would be unfamiliar with the layout of the base, and especially with the on-base hotel where the alleged incident occurred. What if the hotel had been closed for renovation? What if the base had been on lockdown during the night of the alleged incident? What if the base did not even have a hotel? The San Diego commander would not be aware of any such factors, any of which could have a significant impact on a probable cause determination. The point is that there are a multitude of unspoken (and perhaps even unrealized) factors that play into any decision about probable cause, and the San Diego commander — nearly 3,000 miles away — was not in a position to be aware of, and base the exercise of his independent judgment on, such factors.[7]

Additionally, the Virginia Beach commander was capable of acting as more of a neutral and detached magistrate — free from irrelevant concerns about military security and other risks that may have distracted the San Diego commanding officer who was, as the Government itself asserts, "one of the relatively few individuals with an intimate knowledge of Seerden's business aboard JEBLCFS, and what information he may have amongst his personal belongings." Govt. Resp. at 10.

---

[7] *See* discussion in Section II, *infra*.

Not surprisingly, as Seerden points out in his Reply, the Government has attempted to refute his claim that the CASS was not within the authority of the San Diego commander by likening the search of Seerden's cell phone to a "check -in inspection." As a "check-in inspection," the government urges the court recognize a lesser "expectation of privacy in his person or belongings" to justify the search. *See* Def. Reply at 3. The Government's effort to modulate Seerden's Fourth Amendment property rights in his cell phone contravenes that Amendment's property baseline and must be rejected.

## II. WARRANTS FOR SEARCHES AND SEIZURES ARE TO BE ISSUED BY AN OFFICIAL WITH JURISDICTION AND AUTHORITY OVER THAT AREA.

Defendant argues that Commander B. Cunningham, stationed in San Diego, California, had no authority to issue a Command Authorization for Search and Seizure ("CASS") to search and seize Mr. Seerden's personal property located on the Little Creek base in Virginia, rendering the CASS "void from its inception." Motion at 16. As Defendant notes, Military Rule of Evidence 315(d) is quite clear, giving authority to issue such searches only to the commander "who has control over the place where the property or person to be searched is situated or found."

The requirement that a warrant generally may issue only from an official with authority over the geographic area in question is not a technical matter that can be waived, but a well established protective principle — not only in the military, but in civilian contexts as well. The Military Rule of Evidence is completely consistent with the Federal Rules of Criminal Procedure, which provide (subject to a few narrow exceptions not relevant here) that:

> a magistrate judge with authority **in the district** —or if none is reasonably available, a judge of a state court of record **in the district**, has authority to issue

> a warrant to search for and seize … property located **within the district**. [F.R.Crim.P. 41(b)(2) (emphasis added).]

The rule which limits a magistrate's authority to property within his district has been applied even in the absence of controlling statute or rule. For example, even where the Texas legislature was silent on the matter, the Court of Criminal Appeals of Texas has ruled that "a statutory county court judge is limited to acting within the county of his court unless expressly authorized to act beyond that county." Sanchez v. State, 365 S.W.3d 681, *11 (Tex. Crim. App. 2012). Likewise, the Supreme Court of California has required that, in order for a search warrant to be executed outside its jurisdiction of issue, it must involve a crime that took place within the jurisdiction where the warrant was issued. As the Court explained, "limiting a magistrate's jurisdiction to issue out-of-county warrants to cases in which a crime was committed within the issuing county" will "alleviate[] … Defendant's fears that officers may forum shop to obtain uninformed, distant magistrates." People v. Fleming, 29 Cal. 3d 698, 707 (Cal. 1981). In this case, the alleged crime that formed the basis for issuance of the CASS was committed in Virginia Beach, Virginia, outside the jurisdiction of the San Diego commander who issued the CASS.

Finally, an Ohio appellate court reversed a trial court's finding no Fourth Amendment violation in a magistrate having issued a search warrant to be executed outside his jurisdiction. State v. Jacob, 185 Ohio App. 3d 408, 413 (Ohio Ct. App., Montgomery County 2009). In granting the motion to suppress, the appellate court quoted Justice Holmes' observation "in a different context" for the principle that "'a line must be drawn somewhere to prevent the Fourth Amendment's guarantee against unreasonable searches and seizures from becoming no

more than a 'form of words.'" *Id.* at 414. In conclusion, the Ohio court held that "a magistrate who acts beyond the scope of his authority ceases to act as a magistrate for Fourth Amendment purposes." *Id.*[8]

The limitation on the jurisdiction of a magistrate to "his district" becomes particularly important when the Fourth Amendment is viewed from a property perspective. It may be that, under a privacy analysis, the government could argue that Seerden's reasonable expectation of privacy in his person and cell phone should yield to the military's interests in mission and security, and that privacy considerations can be evaluated by any commander. However, from a property perspective, the "his district" limitation it matters a great deal. The San Diego commander may have had authority over Seerden from a command perspective, but he had no authority over the location — the "persons, houses, papers, and effects" — where the search occurred. In order to protect a person's property rights, Military Rule of Evidence 315(d) gives authority only to the commander "who has control over the place" where the search is to occur.

---

[8] Somewhat contrary to the codes of some other states, the Code of Virginia authorizes magistrates to issue search warrants "throughout the Commonwealth," but even that broad authorization does not extend jurisdiction to opposite side of the country, the way the CASS in this case was issued. Code of Virginia § 19.2-44.

## **CONCLUSION**

For the reasons raised in Mr. Seerden's Motion to Suppress, and his Reply Memorandum, these *amici curiae* respectfully urge the Court to grant his Motion to Suppress based on a violation of the Fourth Amendment.

Respectfully submitted,

/s/ *William J. Olson*
William J. Olson (Virginia Bar No. 15841)
Attorney for Movant Conservative Legal Defense
and Education Fund
Herbert W. Titus
Jeremiah L. Morgan
Robert J. Olson
William J. Olson, P.C.
370 Maple Ave. W., Ste. 4
Vienna, VA  22180-5615
(703) 356-5070
(703) 356-5085 (fax)
wjo@mindspring.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 7th day of July, 2017, I will electronically file the foregoing Conservative Legal Defense and Education Fund Brief *Amicus Curiae* in Support of Defendant's Motion to Suppress with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David A. Layne
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
david.layne@usdoj.gov

Elizabeth M. Yusi
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
elizabeth.yusi@usdoj.gov

Andrew W. Grindrod
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, VA 23510
andrew_grindrod@fd.org

Keith L. Kimball
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, VA 23510
keith_kimball@fd.org

    */s/ William J. Olson*
William J. Olson (Virginia Bar No. 15841)
Attorney for Movant Conservative Legal Defense
and Education Fund
Herbert W. Titus
Jeremiah L. Morgan
Robert J. Olson
William J. Olson, P.C.
370 Maple Ave. W., Ste. 4
Vienna, VA 22180-5615
(703) 356-5070
(703) 356-5085 (fax)
wjo@mindspring.com