# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

UNITED STATES OF AMERICA,

v.                                                             Crim. No. 2:17cr67

GREGORY KYLE SEERDEN,

            Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Gregory Kyle Seerden's ("Defendant") Motion to Suppress all evidence obtained from the Naval Criminal Investigative Service's ("NCIS") search of his cellular telephone. ECF No. 21. Defendant moves for suppression pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth Amendment to the United States Constitution ("Fourth Amendment"). *Id.* The Government filed a Response on June 20, 2017, ECF No. 24, and Defendant filed a Reply on June 26, 2017, ECF No. 27. The Court held a hearing for this matter on July11, 2017. ECF No. 35. For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY

Defendant, a First Class Petty Officer in the United States Navy, was temporarily stationed at Joint Expeditionary Base Little Creek Fort Story ("JEBLCFS") from January 21, 2017 through January 28, 2017. Defendant, based in San Diego, California, was sent to JEBLCFS for a one week training. On the evening of January 26, 2017, F1—an adult female—met Defendant while she was out with friends. F1 reported she spent the evening of January 26, 2017, into the morning of January 27, 2017, with Defendant at various bars and restaurants in Virginia Beach. Although F1 noted she lost consciousness during her evening with Defendant,

1

due to alcohol consumption, she recalled returning to JEBLCFS with Defendant and producing her driver's license as identification before moving onto the base.

Thereafter, F1 accompanied Defendant to Defendant's room at the Navy Gateway Inns and Suites. During that evening, F1 recalled Defendant being on top of her in his bed, and telling him to stop. Upon F1 waking up around 4:00 a.m., on January 27, 2017, Defendant informed her that they had engaged in sexual intercourse. F1 asked to leave, and Defendant drove her to JEBLCFS's gate to hail a taxi. While F1 was just outside the gate, a sentry noticed F1 crying. F1 told the sentry about her evening with Defendant and the alleged sexual assault. Shortly after Defendant dropped F1 off at JEBLCFS's gate, Defendant attempted to call F1.

Later that morning, NCIS initiated a "pretext communication" between F1 and Defendant via text-message. During that communication, Defendant admitted he had sex with F1, without a condom, and knew F1 was inebriated during intercourse.

As a result of the pretext communication, NCIS elected to bring Defendant in for further questioning that same day. When NCIS retrieved Defendant, he was in classroom training at JEBLCFS, which required Defendant to leave his cellular telephone outside the classroom. Pursuant to NCIS protocol, NCIS agents handcuffed Defendant for transportation to the location where NCIS subsequently conducted the investigation. Because Defendant was unable to retrieve his belongings from the classroom, prior to the investigation, NCIS agents asked Defendant if he had any items he wanted to bring with him. Defendant requested that NCIS bring his cellular telephone.

Once NCIS agents secured Defendant's cellular telephone, they sought a Command Authorization for Search and Seizure (CASS) for permission to search Defendant's cellular telephone for evidence regarding the alleged sexual assault ("the first search"). To secure

authorization, NCIS received guidance from Judge Advocates at JEBLCFS, as well as Judge Advocates in Defendant's chain of command. All of the consulted parties concluded that Defendant's commanding officer in California was the appropriate person to issue the CASS to physically examine Defendant and to physically examine Defendant's cellular telephone. Defendant's commanding officer, located in California, provided the requested authorization.

Once NCIS received the CASS, they brought Defendant's cellular telephone to the NCIS digital forensics lab where the digital forensics examiner created an extraction of Defendant's cellular telephone and analyzed its data. The forensic examiner specifically extracted stored photographs from Defendant's cellular telephone, which included thumbnail size icons of images. During the search, the forensic examiner, based upon his experience and training in child exploitation investigations, suspected some of the extracted photos included images of child pornography.

Because the initial CASS only provided authorization to search Defendant's cellular telephone for images related to the adult sexual assault, the forensic examiner discontinued the extraction, and consulted with the lead case agent on how to proceed. On March 20, 2017, NCIS obtained a federal search warrant from a United States Magistrate Judge, who issued a search warrant to examine Defendant's cellular telephone for evidence related to child pornography ("the second search"). Upon receipt of the search warrant, the forensic examiner resumed his analysis of the cellular telephone and identified approximately 78 images and four videos of suspected child pornography.

On March 31, 2017, the United States obtained a criminal complaint charging Defendant with one count of possession of child pornography in violation of 18 U.S.C. § 2252A (5)(A), and one count of production of child pornography in violation of 18 U.S.C. § 2251. ECF No. 3. On

April 20, 2017, a Grand Jury in the Eastern District of Virginia indicted Defendant on four counts. Count One charged Defendant with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). Counts Two and Three charged Defendant with Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(1). Count Four charged Defendant with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The Indictment also contained a criminal forfeiture count. ECF No. 10.

On June 6, 2017, Defendant moved to suppress all evidence obtained from the search of Defendant's cellular telephone on the aforementioned dates. ECF No. 21. On June 20, 2017, the Government filed a response. ECF No. 24. On June 26, 2017, the Defendant filed a Reply. ECF No. 27. On July 11, 2017, the Court held a hearing in this matter.

## II. LEGAL STANDARD

A district court, in analyzing a motion to suppress, may make findings of fact, as well as rulings of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993). *See also Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) ("In the usual case, the fact finder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.").

As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant

establishes a basis for his motion to suppress, the burden shifts to the government to prove, by a preponderance of the evidence, that the challenged evidence is admissible. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Matlock*, 415 U.S. 164, 178 (1974).

## III. DISCUSSION

Defendant moves to suppress all evidence seized from a search of his cellular telephone, authorized by Defendant's commanding officer and a civilian magistrate judge, on five grounds. First, Defendant asserts he has standing to challenge the search and seizure of his personal cellular telephone. Second, Defendant argues the Fourth Amendment's protections extend to him. Third, Defendant argues the search of his cellular telephone violated his Fourth Amendment rights because the wrong authority authorized the CASS. Fourth, Defendant asserts that there was no probable cause to search Defendant's Telephone. Fifth, Defendant asserts that as the result of the foregoing, suppression is the appropriate remedy. Because the Government does not challenge Defendant's standing in this matter, the Court will not discuss this issue. The remaining issues are discussed, in turn, below.

### A. Fourth Amendment Protections & Servicemen

Defendant argues that neither his status as a member of the United States armed services, nor his presence on the JEBLCFS, "left him unprotected by the Constitution." ECF No. 21 at 4.

The Fourth Amendment protects, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Accordingly, "[t]he Fourth Amendment protects members of the armed services from unreasonable searches and seizures, *see Henson v. United States*, 27 Fed. Cl. 581, 58/3/201792–93 (1993), albeit with

different standards than those that apply in the civilian context." *United States v. Rendon*, 607 F.3d 982, 990 (4th Cir. 2010) (quoting *Parker v. Levy*, 417 U.S. 733, 743 (1974)).

The United States Supreme Court ("Supreme Court") has held that because the military is a specialized society "governed by a separate discipline from that of the civilian," the reasonable expectation of privacy enjoyed by a civilian is necessarily reduced in the service member. *Parker v. Levy*, 417 U.S. 733, 744 (1974); *see also Rendon*, 607 F.3d at 990 ("Because '[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian, *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953),' reasonable expectations of privacy in the military society will differ from those in the civilian society.").

To determine whether a search was unreasonable in a military context, the court must sift its analysis through the sieve of military standards, as opposed to what is reasonable for a civilian. *See Rendon*, 607 F.3d at 990 (citing *Parker*, 417 U.S. at 758) ("The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it."); *United States v. Grisby*, 335 F.2d 652, 656 (4th Cir. 1964) ("Different standards apply to military personnel, but that is not because the Constitution does not reach military courts but because military personnel are subject to military control and to military law."); *United States v. Rogers*, 388 F. Supp. 298, 301 (E.D. Va. 1975) ("[A]s long as the military respects the rights guaranteed by the Fourth Amendment's prohibition against unreasonable searches and seizures, the military need not be bound by all of the procedural formalities that are imposed upon civilian law enforcement agencies.").

Here, there is no dispute that NCIS conducted a search of Defendant's telephone as the result of an incident that allegedly occurred on its base. There is no dispute that at the time of the

6

search, Defendant, a First Class Petty Officer in the United States Navy, was at the JEBLCFS for military training. There is also no dispute that military personnel conducted the search. As a result, the Court finds that the Fourth Amendment applies to Defendant pursuant to military standards. But because Defendant's telephone was searched under two separate authorizations, each search is independently analyzed below.

## B. Unit Commander's Authority to Authorize a Search

Defendant asserts that the CASS was void *ab initio*, because the officer in San Diego, CA who signed the CASS did not possess the authority to issue a CASS over Defendant's belongings on the Little Creek base in Virginia.

Pursuant to Military Rule of Evidence 315(d), a search is valid only if it is issued by an impartial individual. An impartial individual is a commander, military judge or magistrate. Mil. R. Evid. 315(d)(1) and (2). A military commander is defined as "a commander or other person serving in a position designated by the Secretary concerned as either a position analogous to an officer in charge or a position of command, who has control over the place where the property or person to be search is situated or found, or if that place is not under military control, having control over persons subject to military law or the law of war." Mil. R. Evid. 315(d)(1). A military judge or magistrate "is a person who is authorized under regulations prescribed by the Secretary of Defense or the Secretary concerned." Mil. R. Evid. 315(d)(2).

Here, the person who authorized the CASS for the first search of Defendant's telephone was Defendant's unit commander in San Diego, CA. Pursuant to the definitions provided in Military Rules of Evidence 315(d)(1), Defendant's unit commander did not have the authority to authorize any search on JEBLCFS because Defendant's unit commander did not have control over the place where the property or person to be searched was situated. Although this was an

unintentional technical violation, the court similarly finds that the unit commander also lacked authority, under the second prong of the definition because the search occurred on JEBLCFS, which is clearly under military control. For these reasons, Defendant's unit commander lacked authority to authorize the first search.

## C. Probable Cause & the Good Faith Exception

Defendant asserts that the searches of his telephone were improper, and the fruits therof should therefore be suppressed, because there was no probable cause to support the belief that evidence of the alleged sexual assault would be found on Defendant's telephone. Because two searches were conducted, the Court will analyze each search, in turn, below.

### 1. First Search: Probable Cause

Pursuant to military law, evidence from a search is admissible if it is based on probable cause and authorized by the proper authority (e.g. a commander, or military judge or magistrate). *See generally* Mil. R. Evid. 315. A search is based on probable cause if "there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." *Id.* at 315(f)(2). A search authorization may be based on hearsay evidence in whole or in part. *Id.*

> A probable cause determination is based on any of the following:
>
> (A) written statements communicated to the authorizing official;
> (B) oral statements communicated to the authorizing official in person, via telephone, or by other appropriate means of communication; or
> (C) such information as may be known by the authorizing official that would not preclude the officer from acting in an impartial fashion. The Secretary of Defense or the Secretary concerned may prescribe additional requirements through regulation.

*Id.* at (f)(2)(A)-(C).

Additionally, when a Defendant challenges seized evidence on the ground that the authorization lacked probable cause, "the evidence relevant to the motion is limited to evidence concerning the information actually presented to or otherwise known by the authorizing officer. . ." Mil. R. Ev. 311(d)(4)(a).

Here, NCIS contacted Defendant's unit commander, either orally or in writing, to secure authorization to search Defendant's telephone. Thereafter, Defendant's unit commander, who was stationed in San Diego, CA authorized the search pursuant to the allegation that Defendant sexually assaulted F1, as well Defendant's admission, via text, that he knowingly had intercourse with F1 while she was intoxicated. Because NCIS had evidence that Defendant corresponded with F1 via telephone, it was not unreasonable for NCIS to believe that there may be additional evidence on Defendant's telephone to corroborate F1's allegation. At issue is the Court's earlier finding that the unit commander was not authorized to conduct the search—therefore rendering the search unlawful. But the good faith exception, discussed in greater detail below, may be applicable in this case to permit the use of the unlawfully obtained evidence.

## 2. First Search: Good Faith Exception

Pursuant to military law, evidence obtained as the result of an unlawful search may be used if:

> (A) the search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;
>
> (B) the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and

(C) the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard.

Mil. R. Evid. 311(c)(3).

Because this is a conjunctive rule, if any portion of the exception fails, the Court need not analyze the other prongs. Here, there is no evidence that anyone, other than the unit commander authorized the first search. As a result, the Court finds that the good faith exception does not cure the first search.

### 3. Second Search: Probable Cause

Because the second search relied upon evidence found during the first search, the court must consider whether evidence obtained unlawfully may establish probable cause for the magistrate judge's issuance of the search warrant.

Pursuant to the Fourth Amendment, probable cause "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," *United States v. Ventresca*, 380 U.S. 102, 105 (1965), must exist for a search warrant's proper issuance. *See United States v. Katz*, 389 U.S. 347, 365 (1967) ("no warrants shall issue but those 'particularly describing the place to be searched, and the persons or things to be seized.' "). In determining whether probable cause supports a search warrant, the crucial element is "whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term 'probable cause' means less than evidence which would justify condemnation,' *Locke v. United States*, 7 Cranch 339, 348 (1813) and that a finding of 'probable cause' may rest upon evidence which is not

10

legally competent in a criminal trial." *Ventresca*, 380 U.S. at 107 (quoting *Draper v. United States*, 358 U.S. 307, 311 (1959)).

When evaluating the constitutionality of a search warrant, the analysis "should begin with the rule that the informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests." *Id.* at 105-06 (citing *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) *abrogated by Harris v. United States*, 331 U.S. 145 (1947)).

Here, the NCIS special agent submitted the search warrant application ("application") for permission to search Defendant's telephone in relation to a violation of 18 U.S.C. 2252(a)(1)—transportation of child pornography; 18 U.S.C. 2252(a)(2)—receipt and/or distribution of child pornography; and 18 U.S.C. 2252(a)(4)—possession of child pornography and/or access with intent to view child pornography. The supporting affidavit outlined the NCIS agent's training in child pornography and authorization to investigate violations of U.S. laws and to execute search warrants. Under the section entitled, "Probable Cause to Search the Premises" the agent stated, in relevant part, that as the result of Defendant's commander in San Diego, CA authorizing the CASS to search Defendant's telephone,

> . . . the Examiner saw thumbnail-size images of naked, prepubescent children engaged in sexual acts, specifically oral sex. The Examiner indicated the children had their legs splayed open to expose their genitals. The examiner also viewed an image of a small child in underwear beside a male with an erect penis exposed. Neither the child nor the male's faces were in the photograph. The Examiner also indicated he viewed images that could possibly depict bestiality. The Examiner did not conduct further analysis of the images in the absence of additional authorization.

ECF No. 34 at 9.

As the result of this statement, and others, it was reasonable for the magistrate judge to believe that further investigation of Defendant's telephone would reveal additional photos of

11

child pornography, and further violations of the aforementioned statutes. Stated differently, probable cause supported the search warrant's issuance for Defendant's telephone—albeit obtained through unlawful means.

### 4. Second Search: Exclusionary Rule

Although the Court finds that probable cause existed to support the search warrant's issuance for further investigation of Defendant's telephone for child pornography, the remaining issue is whether evidence, obtained as the result of an unintentional technical error, must be excluded and whether the good faith exception applies.

Although "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the Supreme Court adopted the exclusionary rule "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United State DeQuasie*, 373 F.3d 509, 519 (4th Cir. 2004) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). As a general matter, the exclusionary rule provides that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure," *Calandra*, 414 U.S. at 347, and it "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *DeQuasie*, 373 F.3d at 519 (quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (citations omitted)).

If a Court finds, however, that a search warrant was issued as the result of a violation of the federal rules, the Court must also consider ". . . whether the violation was merely technical or instead rises to the level of a violation of the Fourth Amendment." *United States v. Horton*, --

F.3d--, 2017 WL 3122073, at *4 (8th Cir. 2017) (citing *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015); *United States v. Moore*, 41 F.3d 370, 375 (8th Cir. 1994) (analyzing whether a warrant defect was substantive or "a mere technical" error)). Such a violation "is not per se an unreasonable search and seizure in violation of the Fourth Amendment." *See Horton*, -- F.3d--, 2017 WL 3122073, at *4 (quoting *United States v. Welch*, 811 F.3d 275, 280 (8th Cir.), cert. denied, ⎯ U.S. ⎯, 136 S. Ct. 2476 (2016)). "Absent a constitutional infirmity, the exclusionary rule is applied only to violations . . . that prejudice a defendant or show reckless disregard of proper procedure." *Horton*, No. 16-3976, --F.3d--, 2017 WL 3122073, at *4 (quoting *United States v. Hyten*, 5 F.3d 1154, 1157 (8th Cir. 1993)). Accordingly, a court is not required to address "prejudice or reckless disregard for procedure" if the Court determines that a warrant was issued as the result of an authorization that was outside of the issuer's jurisdictional boundaries. *See Horton*, --F.3d--, 2017 WL 3122073, at *4 ("Thus, we need not address prejudice or reckless disregard for procedure if we determine that a warrant issued outside of a magistrate's jurisdictional boundaries is a violation of constitutional magnitude—that is, a violation of the Fourth Amendment.").

In *Horton*, a magistrate judge, in the Eastern District of Virginia ("EDVa"), authorized a search warrant that permitted FBI agents to use a network investigative technique (NIT) that searched computers both inside and outside of the EDVa. *Horton*, 2017 WL 3122073, at *1. Both Defendants moved to suppress evidence obtained pursuant to that search warrant. *Id.* In a combined order, the district court granted suppression "because 'the magistrate judge lacked authority, and thus jurisdiction, to issue the NIT Warrant,'" which meant that " 'there simply was no judicial approval' of the NIT Warrant as required by the Fourth Amendment." *Id.* at *7 (quoting *United States v. Croghan*, 209 F. Supp. 3d 1080, 1090 (S.D. Iowa Sept. 19, 2016). On

appeal, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") reversed. *Id.* Both Defendants were ultimately indicted separately for accessing child pornography.

The Eighth Circuit, in its analysis of the exclusionary rule, agreed with the district court that the NIT warrant was both invalid at its inception and was the constitutional equivalent of a warrantless search. *Id.* at *4. The Court further noted that "[t]he possibility that the magistrate could have executed a proper warrant in the Eastern District of Virginia, however, does not save this warrant from its jurisdictional error." *Id.* (citations omitted). Accordingly, the Court held that "the NIT warrant was void *ab initio*, rising to the level of a constitutional infirmity." *Id.* The Eighth Circuit ultimately reversed the district court's suppression ruling because the *Leon* good faith exception applied.

Here, like in *Horton*, the CASS that supported the initial search of Defendant's telephone, which served as the basis of the search warrant affidavit that supported the second search, was authorized by a person who lacked the jurisdiction to authorize the search. As a result, the magistrate judge's subsequent issuance of a search warrant, which relied upon evidence obtained from the first search, was void *ab initio*, and therefore presents evidence that a constitutional infirmity exists.

### 5. Second Search: Good Faith Exception

Simply because a Fourth Amendment violation has occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean the court should apply the exclusionary rule. *Horton*, at *5 (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)). "Even when an unreasonable search does exist, the Supreme Court has explained, we must be persuaded that 'appreciable deterrence' of police misconduct can be had before choosing suppression as the right remedy for a Fourth Amendment violation." *Id.* (citing *United States v. Krueger*, 809 F.3d

14

1109, 1125 (10th Cir. 2015) (Gorsuch, J., concurring) (quoting *Herring*, 555 U.S. at 141)). A warrantless search is "presumptively unreasonable and suppression is an appropriate remedy unless the *Leon* good faith exception applies." Accordingly, a court is not foreclosed from relying upon the good faith exception simply because an authority authorized a search outside of his jurisdiction. *Horton*, 2017 WL 3122073, at *5 (citing *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010) (rejecting the argument that when a judge "lack[s] legal authority to issue the relevant warrant, the good faith exception is foreclosed.").

In conducting a good faith analysis, the court must focus its review on "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of 'all of the circumstances.' " *Horton*, 2017 WL 3122073, at *5 (citing *Herring*, 555 U.S. at 145) (quoting Leon, 468 U.S. at 922 n.23). This is so, in part, because "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Horton*, 2017 WL 3122073, at *5 (quoting *Herring*, 555 U.S. at 144). As a result, a court, in its analysis of whether to suppress evidence in light of a Fourth Amendment violation, must balance deterrence versus the costs of suppression, and "the benefits of deterrence must outweigh the costs." *Horton*, 2017 WL 3122073, at *5 (citing *Master*, 614 F.3d at 243) (quoting *Herring*, 555 U.S. at 141); *See also Horton*, 2017 WL 3122073, at *7 ("On balance, the marginal benefit of deterrence fails to outweigh the associated costs: "letting guilty and possibly dangerous defendants go free— something that 'offends basic concepts of the criminal justice system.' ").

To that end, suppression should generally be a "last resort," not a "first impulse" of the court. *Horton*, 2017 WL 3122073, at *6 (quoting *Hudson v Michigan*, 547 U.S. 586, 591 (2006)).

Generally, the only instances where a court should find that the good faith exception does not apply are:

> (1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)";
>
> (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
>
> (4) if under the circumstances of the case the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. DeQuasie*, 373 F.3d 509, 519-20 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923).

In *Horton*, the Court ultimately reversed the district court's ruling that the search warrant's issuance was improper because the magistrate judge lacked jurisdiction, in large part, because,

> [W]e do not believe that law enforcement acted in bad faith, and "[e]xclusion of the evidence seized pursuant to the NIT warrant would serve little deterrent purpose where the mistaken conduct of the magistrate judge, not the officers, invalidated the warrant." *Taylor*, ——F. Supp. 3d at ——, 2017 WL 1437511, at *16. . . . On balance, the marginal benefit of deterrence fails to outweigh the associated costs: "letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.' " *Herring*, 555 U.S. at 141, 129 (quoting *Leon*, 468 U.S. at 908). We therefore apply the *Leon* exception to this case and reverse the district court's grant of suppression.

*Horton*, at * 7.

Accordingly, like in *Horton*, the Court finds that although Defendant's unit commander lacked the authority to authorize the CASS, this violation was merely technical and does not rise to the level where exclusion is warranted. *See United States v. Horton*, -- F.3d --, 2017 WL

16

3122073, at *5 (8th Cir. 2017)). While the court may find that a search was authorized by the wrong person, if there is no evidence that the authorization was as the result of a reckless disregard of procedure the search may still be deemed valid. *See Horton*, 2017 WL 3122073, at *4 ("Absent a constitutional infirmity, the exclusionary rule is applied only to violations of Federal Rule 41 that prejudice a defendant or show reckless disregard of proper procedure.").

Moreover, the four exceptions to the good faith rule are not applicable here. First, there is no evidence that the magistrate judge was misled by information in the affidavit that the affiant knew was false, or should have known was false except for reckless disregard of the truth. In the instant case, the facts show that the NCIS agents consulted a judge advocate before searching Defendant's cellular telephone. Pursuant to the advice from the judge advocate, NCIS agents sought authorization from Defendant's commanding officer in California to obtain the CASS; and that commanding officer, upon NCIS's request, pursuant to guidance from a judge advocate, subsequently authorized the search of Defendant's cellular telephone in accordance with the request. Although the authorization for the first search was improper and unlawful, there is no indication or argument that the NCIS examiner who submitted the search warrant affidavit, in support of the search warrant application, knew or should have known that the evidence found on Defendant's cellular telephone was unlawfully obtained.

Second, there is no evidence, or argument, that the issuing magistrate judge wholly abandoned his judicial role. Third, the court has already held that the search warrant application provided probable cause for the search warrant's issuance. Fourth, the court finds that the search warrant was not facially deficient and explicitly stated the item to be searched ("One Cellular Telephone, described as follows: A white in color iPhone, Model number A166 currently in the possession of the Naval Criminal Investigative Service (NCIS), in Norfolk, Virginia.").

Moreover, as a matter of public policy, the exclusionary rule was not created to deter the conduct that occurred in this case, where NCIS agents sought advice from a judge advocate, and subsequently relied upon that advice that was ultimately wrong. In the present case, NCIS agents attempted to follow the law, and received authorization from a commanding officer, where, in a general sense, it would not be unreasonable for a person in the military to believe that person had the authority to authorize the search.

As the Supreme Court held in *Herring*, "The exclusionary rule is not an individual right and applies only where it 'results in appreciable deterrence.' " 555 U.S. at 141. There must be evidence that the unlawful conduct was "sufficiently deliberate" so that exclusion can meaningfully and objectively deter it. *Id.* at 144-47. Here, there is no evidence that the NCIS agents deliberately or recklessly conducted an unlawful search of Defendant's cellular telephone, or were grossly negligent in their application of the military rules of evidence to obtain authorization for either search. Likewise, there is no evidence, or argument, that NCIS's conduct was the result of some recurring or systematic negligence. For these reasons, the Court finds that the good faith exception applies, and that the motion to suppress is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

The Clerk is **DIRECTED** to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 14, 2017

Raymond A. Jackson
United States District Judge